# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ELVIN SAUCIER,

               **Plaintiff,**

        **v.**                             **Case No. 21-CV-1441**

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security Administration,

               **Defendant.**

---

# DECISION AND ORDER

---

## 1. Introduction

Alleging he has been disabled since January 1, 2014 (Tr. 13), plaintiff Elvin Saucier seeks supplemental security income. After his application was denied initially (Tr. 86-98) and upon reconsideration (Tr. 100-17), a hearing was held before Administrative Law Judge (ALJ) Cynthia Bretthauer on April 13, 2021 (Tr. 31-60). On May 17, 2021, the ALJ issued a written decision concluding that Saucier was not disabled. (Tr. 10-30.) After the Appeals Council denied Saucier's request for review on October 20, 2021 (Tr. 1-6), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Saucier "has not engaged in substantial gainful activity since July 24, 2019, the application date." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Saucier has the following severe impairments: obesity; panhypopituitarism; diabetes insipidus; asthma; chondromalacia; and mild left-sided hemiplegia, status-post cerebrovascular accident. (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or

medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Saucier "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Saucier has the RFC "to perform light work as defined in 20 CFR 416.967(b), except he can never climb ladders, ropes or scaffolds. He can frequently, but not constantly, use the left hand to perform gross and fine manipulation. He should avoid concentrated exposure to unprotected heights and moving and hazardous machinery[.]" (Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Saucier has no past relevant work. (Tr. 24.)

3

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that there were jobs that Saucier could perform, including marker (Dictionary of Occupational Titles (DOT) Number 209.587-034), garment sorter (DOT Number 222.687-014), and router (DOT Number 222.587-038). (Tr. 25.) Therefore, Saucier was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"

*L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Saucier contends that the ALJ erred in assessing the opinion evidence (specifically, the opinions of his treating provider, Richard M. Hayes, M.D., and of psychological consultant Howard Tin, Psy.D.); failed to set forth a legally sufficient symptom evaluation; and erred by not evaluating his fatigue.

### 4.1. Treating Provider's Opinions

Dr. Richard Hayes, Saucier's treating provider, stated in a July 2020 correspondence that Saucier "has a difficult time standing more that [sic] 15 minutes due to severe pain" (Tr. 597), and "because of [his] panhypopituitarism, chronic bone pain from Calcium loss, and the effects from the stroke he is completely disabled and unable to work" (Tr. 597). Dr. Hayes also authored two Physical Residual Capacity Questionnaires, dated August 2019 (Tr. 541-44) and March 2021 (Tr. 641-43), respectively. In both questionnaires Hayes indicated that Saucier's panhypopituitarism and status-post cerebrovascular accident resulted in extreme limitations. For example, Hayes indicated that Saucier could stand or walk for less than two hours in an eight-hour workday; could sit for no more than one hour at a time; could stand for ten minutes at a time; could lift or carry ten pounds or less rarely; could use the bilateral upper extremities to reach, handle, and finger for ten percent of the workday; would require unscheduled

breaks in excess of ten percent of the workday; and would be absent for more than four days per month. (Tr. 541-44, 641-43.)

An ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although an ALJ must consider all of these factors, she need only explain how she considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

The ALJ found Dr. Hayes's opinions not persuasive because they were not supported by his treatment notes, "not consistent with the longitudinal medical evidence of the record," and "not consistent with the claimant's reported activity level." (Tr. 22, 24.) She also found unpersuasive Hayes's assertion from his July 2020 correspondence that Saucier "is completely disabled and unable to work" (Tr. 597) because it was a disability finding reserved for the Commissioner (Tr. 22).

Saucier argues that the ALJ insufficiently explained how she considered the supportability and consistency factors when dismissing Hayes's opinions as unpersuasive. Therefore, Saucier argues, the ALJ committed material error "by failing to properly evaluate the supportability and consistency" of Hayes's opinion evidence as

required by the regulations. (ECF No. 13 at 5-10 (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).)

The ALJ concluded that Hayes's opinions were "not supported by [his] treatment notes, which reflect some degree of left hemiplegia and reports of fatigue." (Tr. 22, 24.) Saucier argues that Hayes's treatment notes reflecting his left hemiplegia and fatigue correspond with his symptoms (for example, his weakness, stiffness, and lack of control of one side of his body (ECF No. 13 at 6)) and therefore support Hayes's opined limitations—for example, the off-task time; a limited ability to sit, stand, and walk for extended periods; and a limited ability to reach, handle, and finger (ECF No. 13 at 6).

The ALJ did not explain in what way Hayes's treatment notes reflecting Saucier's left hemiplegia and fatigue were inconsistent with his opinions. And she did not mention any other treatment notes. Thus, what Hayes said in his treatment notes is an insufficient explanation for rejecting his opinion evidence.

The ALJ gave other reasons for finding Hayes's opinions unpersuasive, however. She found that his opinions were not "consistent with the longitudinal medical evidence of the record." (Tr. 22, 24.) Specifically, she noted that Hayes's opinions were inconsistent with an October 2019 "consultative examination that noted only slight weakness in the left hand, but no difficulty grasping or manipulating, and 5/5 strength and normal gait," and with Saucier's August 2019 physical therapy records noting "some balance

abnormalities, [] 5/5 strength of the lower extremities and no need for an assistive device."

(Tr. 22, 24.)

Regarding the consultative examination, Saucier asks "why a one-time consultative examination was more persuasive than the opinion of Plaintiff's treating provider, who had a longitudinal view of Plaintiff's condition, given that panhypopituitarism is a fluctuating condition." (ECF No. 13 at 6.) The Commissioner counters by correctly pointing out that the new regulations no longer require an ALJ to "defer or give any specific evidentiary weight … to any medical opinion(s) … including those from [the claimant's own] medical sources." (ECF No. 17 at 12 (quoting 20 C.F.R. § 416.920c(a)).)

Although the ALJ was not required to attribute to Hayes's opinions any particular significance, 20 C.F.R. § 416.920c(a)), the regulations instruct ALJs to consider the nature of the treating relationship in evaluating the persuasiveness of an opinion. 20 C.F.R. § 416.920c(c). A long treating relationship—Hayes treated Saucier monthly for over twenty years (Tr. 641)—would appear particularly relevant where the provider regularly treats a claimant suffering from a fluctuating condition. *See Bierer v. Kijakazi*, No. 20-CV-747, 2021 WL 4061723, at *4 (E.D. Wis. Sept. 7, 2021). The ALJ, however, did not acknowledge the length of Hayes's relationship with Saucier nor did she acknowledge that Saucier's impairments are fluctuating.

Apart from noting that there were inconsistencies between Hayes's opinions and other medical evidence, the ALJ did not specify what the inconsistencies were or how they undermined Hayes's opinions. Further, she did not specify which of Hayes's opinions were undermined by the inconsistent medical evidence. The lack of an explanation prevents the court from tracking the ALJ's reasons for discounting Hayes's opinions. *Cf. Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("[T]he ALJ's failure to address [the doctor's] report in its entirety prevents this court from tracking the ALJ's reasons for discounting it.").

The ALJ also found Hayes's opinions unpersuasive because they were "not consistent with [Saucier's] reported activity level." (Tr. 22, 24.) The ALJ noted that Saucier

> reported being able to independently attend to his personal care needs, clean, vacuum, read, shop in stores, watch television, use a computer, appropriately handle his finances, care for his dog, build prop replicas using a workbench, run a snow blower, play video games, [] spend time with friends at restaurants and movies …. [and] attend medical appointments.

(Tr. 23.) As Saucier points out, however, the ALJ "did not explain how any specific activity was inconsistent with any of Dr. Hayes' opined limitations." (ECF No. 13 at 7.) Without further explanation, it is not clear which of Saucier's activities were inconsistent with some aspect of Hayes's opinions.

Finally, the ALJ correctly noted that Hayes's assertion from his 2020 correspondence that Saucier was disabled and unable to work was an opinion "reserved for the Commissioner." (Tr. 22.) It is undoubtedly true that the ALJ need not adopt a

treating physician's opinion as to the disability of a claimant. But setting aside Hayes's conclusion that Saucier was disabled, the regulations require that an ALJ sufficiently explain how she considered consistency and supportability in concluding that a treating provider's opinions are not persuasive. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Because the ALJ provided only a cursory explanation for finding Hayes's opinions unpersuasive, the court cannot determine whether she properly considered the supportability and consistency factors in her assessment. As such, she failed to build the requisite accurate and logical bridge between the evidence and her conclusion. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018).

Saucier argues that the ALJ's failure to properly assess the consistency and supportability of Hayes's opinion evidence was not harmless. (ECF No. 13 at 9.) In support, he notes that the Vocational Expert "testified that being off task more than 10 percent of the workday would not be tolerated in a competitive work environment" (ECF No. 13 at 9 (citing Tr. 58)), and that Hayes's Physical Residual Capacity Questionnaires specified that Saucier's symptoms would cause him to be off task in excess of 10 percent of the workday (ECF No. 13 at 5 (citing Tr. 542, 643)). The ALJ herself noted that Hayes's questionnaire opinions indicated that Saucier's "panhypopituitarism and status-post CVA [] resulted in extreme limitations that would preclude all competitive work." (Tr. 24.) Despite noting that Hayes—as Saucier's treating provider—indicated that Saucier had specific limitations, which, in the ALJ's view, effectively precluded "all competitive

work," she provided only cursory explanations for why the inconsistency and supportability factors undermined Hayes's opinions.

In sum, because the ALJ failed to sufficiently explain why she found Hayes's opinions were unsupported by, or were inconsistent with, other evidence, she fell short of her duty under 20 C.F.R. § 416.920c(b)(2). Therefore, remand is required so that she can reassess the supportability and consistency of Hayes's opinion evidence, including his opinion that Saucier's symptoms would cause him to be off task in excess of 10 percent of the workday.

### 4.2. State Psychological Consultant's Opinion

State agency psychological consultant Dr. Howard Tin opined that Saucier had moderate limitations in maintaining concentration, persistence, or pace (Tr. 107) and could perform one- to two-step tasks (Tr. 114). Saucier argues that the ALJ "erred in failing to explain why Dr. Tin's opinion that Plaintiff could perform only one- to two-step tasks was rejected." (ECF No. 13 at 10.) Saucier claims that this error was not harmless because "[a]ll three of the jobs that the ALJ found at step five required reasoning level two skills … and had the ALJ found that he could only perform only one-to two-step tasks, he would have been limited to jobs with a reasoning level of one." (ECF No. 13 at 10-11.)

As with Hayes's opinions, the ALJ had a duty to substantively address how she considered Tin's opinion's supportability and consistency. 20 C.F.R. §§ 404.1520c(b),

416.920c(b). Regarding supportability, the ALJ found that some of Tin's own notes undermined his opinion that Saucier had mild to moderate limitations in mental functioning. (Tr. 17.) For example, in the same questionnaire in which he opined that Saucier had moderate limitations in maintaining concentration, persistence, or pace and could perform one- to two-step tasks, Tin also said that Saucier's "allegation of [mental] disability is inconsistent" with his activities of daily living, and that his "allegation of the severity" of his mental limitations "is not consistent with [his] ability to function generally well from day to day." (Tr. 114.) The ALJ explained that Saucier's mental status examinations were often normal and stable; revealed that Saucier was pleasant, cooperative, and polite; exhibited normal affect, hygiene, and grooming; and spoke fluently with no cognitive difficulties. (Tr. 17 (citing Tr. 328, 339, 579).) Taken together, the ALJ provided a sufficient basis for finding Tin's opinions unpersuasive.

Even if the ALJ's supportability and consistency discussion was deficient, any error was harmless. "[R]emand is required only if the ALJ's error was material." *Tanya C. v. Kijakazi*, No. 20-cv-958, 2021 WL 5769310 (E.D. Wis. Dec. 6, 2022) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). Tin did not "limit" Saucier to one- to two-step tasks, as Saucier argues, but rather noted that Saucier "is *capable* of performing one and two-step tasks." (Tr. 114 (emphasis added).) And even if Tin did limit Saucier to one- to two-step tasks in his opinion, the authority Saucier cites does not support his assertion

that the ALJ's step five jobs—marker, garment sorter, and router—require level two reasoning and preclude those claimants limited to one- to two-step tasks.

In sum, the ALJ's explanation for rejecting Tin's opinion was sufficiently detailed. Even if the ALJ did err, Saucier has not pointed to evidence demonstrating that the error would be material. Therefore, Saucier is not entitled to remand on this ground.

### 4.3. Symptom Severity

The ALJ must assess a claimant's symptoms (i.e., "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

Case 2:21-cv-01441-WED   Filed 09/02/22   Page 13 of 22   Document 19

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

Using frequently employed boilerplate, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 20.) Several pages later, after recounting Saucier's medical history, the ALJ noted that Saucier's panhypopituitarism "is monitored by routine laboratory studies," "is treated with injections," and "has resulted in diabetes, asthma, and chondromalacia." (Tr. 22.) She further noted that Saucier had an acute cerebrovascular accident (CVA) "that has resulted in some mild left-sided hemiplegia," and that "physical examination

documentation from his primary care provider notes decreased range of motion and tenderness of the bilateral knees and left-sided hemiplegia." (Tr. 22.)

After noting these findings, the ALJ concluded that Saucier's subjective allegations about his symptoms "are inconsistent because the medical evidence and [Saucier's] report [sic] activity level do not support the level of decreased functioning." (Tr. 22.) Pointing to the medical record "discussed above," she provided the following summary in support of her conclusion:

> [T]he physical consultative examination was essentially unremarkable and noted only mild weakness of the left hand, but 5/5 strength in all extremities, normal cerebellar testing, intact cranial nerves, and normal gait without the use of any assistive devices. X-rays of the right knee were normal. The evidence does not support a finding that the claimant requires the use of any assistive devices for ambulation and he remains generally independent in his activities of daily living. In addition, the evidence reveals that the claimant has maintained a high level of activity despite his impairments. He has reported being able to independently attend to his personal care needs, clean, vacuum, read, shop in stores, watch television, use a computer, appropriately handle his finances, care for his dog, build prop replicas using a workbench, run a snow blower, play video games, and spend time with friends at restaurants or the movies .... The evidence also reveals that the claimant is able to attend medical appointments as reflected by the medical evidence contained in the record ....

(Tr. 22-23 (citations omitted).)

Saucier argues that, in evaluating his subjective symptoms, the "ALJ failed to provide a symptom evaluation that was sufficient enough for Plaintiff and subsequent reviewers to determine how the evidence was considered." (ECF No. 13 at 12 (citing *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011)).) Specifically, Saucier argues that the

ALJ failed to sufficiently explain how she considered the medical evidence in her symptom evaluation. While "the ALJ mentioned some diagnosis [sic] that were favorable to Plaintiff's claim, such as panhypopituitarism, diabetes, chondromalacia, and hemiplegia," she "did not indicate why this favorable evidence did not support Plaintiff's alleged pain and disabling symptomology." (ECF No. 13 at 12.) Further, while the ALJ gave significant weight to the "normal findings" of an October 2019 "consultative exam," she failed to explain why this opinion evidence was "more probative of the veracity of [his] alleged symptoms and limitations" than the other opinion evidence in the record. (ECF No. 13 at 13.)

The Commissioner defends the ALJ's discussion of the medical evidence, characterizing it as "detailed" and "thorough." (ECF No. 17 at 5 (citing Tr. 21-22).) The Commissioner notes that the ALJ cited "to the record numerous times, and cogently discuss[ed] [Saucier's] medical appointments and examination findings." (ECF No. 17 at 5 (citing Tr. 21-22).) The Commissioner also argues that the ALJ's reliance on the "normal and unremarkable findings" of the October 2019 consultative examination made it "reasonable" for her to conclude that Saucier's subjective symptoms were not as severe as alleged. (ECF No. 17 at 6.) The Commissioner also points to the ALJ's discussion of Dr. Marion Panepinto's August 2020 assessment, which the ALJ found persuasive. (ECF No. 17 at 8 (citing Tr. 23, 110-13).) Like the ALJ, Panepinto "found that [Saucier] is capable of

performing work at less than the full range of light with postural, manipulative, and environmental limitations." (Tr. 23.)

Aside from noting that the October 2019 consultative examination's "unremarkable" findings were inconsistent with Saucier's symptom allegations, the ALJ did not explain why the findings of that one-time consultative examination were more probative than the findings of Saucier's primary care provider. (Tr. 22.) She also failed to explain how other medical evidence in the record was inconsistent with Saucier's allegations. Although she described Panepinto's opinions as persuasive, she did not explain why Panepinto's opinions were more probative than other medical opinions—for example, Dr. Hayes's—when considering the severity of Saucier's symptoms. Nor did she identify which of Saucier's allegations were undermined by the consultative examination or Panepinto's opinions.

SSR 16-3p requires that the ALJ provide "specific reasons for the weight given to the individual's symptoms" that are "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." While the ALJ summarized the objective medical evidence, provided cursory explanations for why some opinions were, in her eyes, "persuasive" and some "not persuasive," and separately summarized Saucier's symptom allegations, she failed to sufficiently explain why the medical evidence supported her conclusion that Saucier's symptom allegations were exaggerated.

That said, not every reason given by the ALJ must be independently sufficient to sustain her conclusion about Saucier's symptom allegations. The court must assess the ALJ's reasoning as a whole. Saucier argues that the ALJ failed to explain how she weighed his treatment history—specifically, his opioid prescriptions and his hormone replacement therapy—when assessing his symptom allegations. (ECF No. 13 at 14-15.) He argues that, having "met his burden of production by providing treatment records showing hormone replacement therapy … and opioid medication[,] … it was the ALJ's duty to assess whether the treatment [he] underwent lent credence to his alleged symptoms and limitations." (ECF No. 18 at 12-13 (citing *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014).)

Apart from mentioning Saucier's ability "to attend medical appointments" (Tr. 22) and the fact that he "is monitored by routine laboratory studies and is treated with injections to address any deficiencies" arising from his panhypopituitarism (Tr. 22), the ALJ did not explain how Saucier's treatment history supported or detracted from his allegations. Saucier testified that his hormone replacement therapy causes fatigue and leads to lightheadedness and exhaustion when performing any kind of physical labor. (Tr. 39.) He also supplied medical records outlining his treatment (Tr. 570, 573, 607) and opioid prescriptions (Tr. 278). Given this evidence, the ALJ erred by not addressing how she considered Saucier's hormone therapy treatment and his opioid prescriptions in her subjective symptom analysis.

Saucier also argues that the ALJ "failed to explain how [his daily activities] were inconsistent with his other statements or the medical evidence." (ECF No. 13 at 13.) Saucier argues that "the ALJ simply concluded that his reported activity level did 'not support the level of decreased functioning as alleged,'" without providing any analysis. (ECF No. 13 at 14 (quoting Tr. 22).)

In response, the Commissioner argues that "the ALJ reasonably found that Plaintiff's 'high level of activity' suggested that he was not as limited as alleged." (ECF No. 17 at 8 (quoting Tr. 16, 23).) And "[e]ven if the ALJ erred by not providing more detailed analysis of Plaintiff's admitted activities," "any error was harmless" because "the ALJ relied on several types of evidence to assess Plaintiff's allegations." (ECF No. 17 at 8.) According to the Commissioner, "the ALJ rested her evaluation of [Saucier's] allegations on the objective evidence, [his] treatment history, opinion evidence, and [his] significant daily activities." (ECF No. 17 at 4-5.) The combination of these factors "undermined [Saucier's] allegations in the ALJ's eyes." (ECF No. 17 at 5.)

However, the ALJ has not supplied the requisite accurate and logical bridge between those factors and her conclusions. *See Steadman v. Saul*, No. 20-CV-190, 2021 U.S. Dist. LEXIS 53169, at *7-8 (E.D. Wis. Mar. 22, 2021) (citing *Taylor v. Saul*, No. 19-CV-359, 2020 U.S. Dist. LEXIS 70731, at *7 (E.D. Wis. Apr. 22, 2020)). To be sure, she did list the day-to-day activities Saucier testified to, framing them as "a high level of activity despite his impairments." (Tr. 23.) But she offered no analysis of how any of these activities were

Case 2:21-cv-01441-WED   Filed 09/02/22   Page 19 of 22   Document 19

inconsistent with any of Saucier's statements about his subjective symptoms. Again, the ALJ failed to connect the evidence in the record to her conclusion that the severity of Saucier's symptoms and limitations are not as severe as he alleges.

Remand is required for reassessment of Saucier's symptoms under SSR 16-3p. Even taking her reasons as a whole, the ALJ did not provide the required accurate and logical bridge between the evidence and her boilerplate conclusion about Saucier's alleged symptoms and their limiting effect.

### 4.4. Residual Functional Capacity — Fatigue

Saucier also argues that "the ALJ failed to evaluate [his fatigue] or cite any evidence supporting why the RFC finding did not include an off-task time limitation due to fatigue." (ECF No. 13 at 11.) For evidence of fatigue, Saucier points to medical records noting subjective evidence of fatigue (ECF No. 13 at 11 (citing Tr. 556-57, 606, 608, 610-11, 613, 615, 617, 623-25, 627, 629)) and testimony alleging that physical labor caused him to feel "lightheaded or exhausted" (Tr. 39). Given this evidence of fatigue, Saucier argues, "the ALJ should have assessed whether he needed off-task time due to fatigue and determined how long or how frequently he would be off-task." (ECF No. 13 at 11.)

In response, the Commissioner argues that the "ALJ did not ignore the evidence in the record pertaining to fatigue," but in fact "acknowledged Plaintiff's allegations concerning, and continued reports of, fatigue ... [and] assessed a restrictive RFC that took

into account all of Plaintiff's symptoms, including fatigue." (ECF No. 17 at 18-19 (citing Tr. 18-19, 21-24).)

The ALJ noted that Saucier "alleges chronic fatigue" (Tr. 19) and "continued to report fatigue" (Tr. 21, 23). She cited Saucier's "ongoing reports of fatigue" as part of her reason for rejecting a state agency medical consultant's opinion that Saucier is "capable of performing work at the medium exertional level with only postural limitations." (Tr. 23.) As Saucier points out, however, the ALJ did not explain how the accommodations included in Saucier's RFC address his fatigue. In fact, it is unclear whether the RFC contemplates Saucier's fatigue at all. The ALJ did limit Saucier "to light work and found that he should avoid concentrated exposure to unprotected heights and moving hazardous machinery." (ECF No. 17 at 19 (citing Tr. 18).) But any connection between these restrictions and Saucier's alleged lightheadedness and exhaustion caused by physical labor is unclear.

The ALJ erred by not explaining in what way she accounted for Saucier's fatigue in his RFC. If the ALJ intended the RFC to account for Saucier's fatigue, she must explain how it does so. If the ALJ decided not to credit the evidence of fatigue in her RFC, she must explain why not. *See* SSR 96-8p. Thus, remand is necessary.

## 5.  Conclusion

Given her brief and vague explanations, it is not clear from the ALJ's opinion whether she properly considered the supportability and consistency factors in assessing

Dr. Hayes's opinion evidence. Therefore, on remand she must reassess his opinions with an emphasis on those factors.

Also due to brief explanations, it is not clear how the ALJ's given reasons support her conclusion that Saucier's symptoms were not as severe as he alleged. Further, it is not clear how, or if, she considered Saucier's significant treatment history in arriving at that conclusion. Therefore, the ALJ must provide more explanation to how she considered the medical opinions, objective evidence, Saucier's treatment history, and his daily activities in light of Saucier's specific symptom allegations.

Finally, the ALJ did not substantively discuss evidence of Saucier's fatigue when deciding his residual functioning capacity. On remand, the ALJ must explain how she evaluated the evidence of Saucier's fatigue, and how, or whether, his RFC was meant to reflect this evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of September, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge